Diane STEWART, Plaintiff,

v.

CORE LABORATORIES, INC., Defendant.

Civ. A. No. CA-3-77-0282-D.

United States District Court, N. D. Texas, Dallas Division.

Oct. 5, 1978.

James C. Barber, Dallas, Tex., for plaintiff.

Bennett W. Cervin, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

This employment discrimination suit has been instituted under Title VII of the Civil Rights Act of 1964 (The Act), as amended, 42 U.S.C. § 2000e et seq. Core Laboratories, Inc. (Core Labs), defendant, has moved to dismiss, alleging that this court lacks subject matter jurisdiction because the written charges of Diane Stewart (Stewart), plaintiff, filed with the Equal Employment Opportunity Commission (EEOC) were not under oath or affirmation as required by Section 706(b) of the Act. 42 U.S.C. § 2000e–5(b). The court is of the opinion that the motion should be granted.

### Relevant Facts

The facts relevant to this motion are undisputed.[1] On April 1, 1976, Stewart filed written charges with the EEOC of unlawful employment practices by Core Labs. She signed her name to the charges below a statement reading "I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief." Immediately below her signature is the statement "Subscribed and sworn to before this EEOC representative" and below that appears the signature of "Azella Lozano, technician." Also on the charge form is a place for the signature of a Notary Public. Stewart's charge has not been dated or signed by a notary public and no notary seal has been affixed.

### The Statute

As originally enacted, the Act provided in relevant part:

*Whenever it is charged in writing under oath by a person claiming to be aggrieved,* or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred . . . that an employer . . has engaged in an unlawful employment practice, the Commission shall furnish such employer . . . with a copy of such charge and shall make an investigation of such charge . . . . (Emphasis added) 42 U.S.C. § 2000e–5(a) (1970).

In 1971 bills were introduced in both the United States House of Representatives and the Senate to amend the Act. Both bills contained procedure for filing charges. The House bill (H.R. 1746) eliminated the necessity of filing charges under oath or affirmation while the Senate bill (S. 2515) specifically added language requiring charges to be in writing under oath or affirmation. A Conference Committee adopted the Senate provision requiring charges to be filed under oath or affirmation rather than the House version which eliminated this requirement. There is nothing more in the legislative history to clarify

---

1. After Core Labs brought to the attention of the court that there was an absence of jurisdiction in this case because the charge was not sworn to, the court gave Stewart the opportunity of a hearing in order to produce evidence as to the circumstances regarding the signing of the charge in this case, and the practices or customs of the EEOC with respect to requiring that charges be sworn to. Stewart declined this opportunity.

Congress' intentions when the Act was amended in 1972. As amended, the Act provides in relevant part:

> Whenever a charge is filed . . . by a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof. *Charges shall be in writing under oath or affirmation* and shall contain such information and be in such form as the Commission requires. (Emphasis added) 42 U.S.C. § 2000e–5(b) (1972).

### Case Law

Core Labs cites *EEOC v. Appalachian Power Co.*, 568 F.2d 354 (4th Cir. 1978), in support of its contention that this court lacks jurisdiction of this case. In *Appalachian*, the EEOC filed an unsworn charge against Appalachian. Upon motion of Appalachian, the district court dismissed the case, holding that the language of the oath requirement to be "plain and unambiguous" and that "to dilute the oath requirement and hold it only directory, as the Commission argues, would be tantamount to ignoring the Congressional language." 13 E.P.D. ¶ 11,293 at 5968 (W.D.Va.1976). The Fourth Circuit affirmed for the reasons set forth in the district court opinion and went on to state:

> Like the court below, we note that Section 706(b) of the Act, as amended 42 U.S.C. § 2000e–5(b) is cast in mandatory terms requiring that "[c]harges [including those instituted by EEOC itself] shall be in writing under oath of (sic) affirmation . . . ." We have previously held the requirements of § 706(b) of the Act to be mandatory, *Patterson v. American Tobacco Co.*, 535 F.2d 257, 271–272 (4th Cir. 1976), and see no reason to ignore the plain language that Congress has enacted.

568 F.2d at 355.

In holding that a sworn charge was mandatory the court made *no distinction between* whether the charge was filed by the EEOC or by an individual.

As can be seen from the statutes quoted above, the 1972 amendment requires the Commission to file charges "upon an oath or affirmation," rather than upon the less onerous requirement of "reasonable cause." Stewart maintains that the 1972 amendment changes the Commission's filing requirement, but leaves the requirement for individuals filing charges unchanged. Stewart also argues that both pre- and post-1972 law states that individual charges shall be under oath or affirmation and therefore judicial construction of the pre-1972 amendment should also control post-1972 issues. A brief discussion of the cases dealing with the requirement that charges be sworn to is helpful.

The first case ruling on this issue is *Choate v. Caterpiller Tractor Co.*, 402 F.2d 357 (7th Cir. 1968). In *Choate* an unsworn complaint was filed with the EEOC. The Seventh Circuit reversed the trial court which had dismissed the case. In doing so the Seventh Circuit stated:

> We are of the view that the district court was in error in holding that its jurisdiction to entertain the suit depended upon whether the charge of discrimination filed with the Commission was under oath. Basic to our view is the fact that the "under oath" requirement relates to the administrative procedures which are conducted by the Commission and which precede any court action. The statute gives the Commission no enforcement powers through the adjudicatory process. It allows the Commission only to investigate charges and attempt to gain compliance by informal methods of conference, conciliation, and persuasion. Enforcement of the rights of aggrieved parties resides exclusively in the federal courts. When the statute is thus considered, it is clear that the requirement for verification of charges lodged with the Commission relates solely to the administrative rather than to the judicial features of the statute. We believe that

the provision is directory and technical rather than mandatory and substantive. 402 F.2d at 359.

The court in *Choate* concluded that whether a charge need be sworn to hinged on where the power to enforce the charge lay. Having found that only federal courts possessed that power, although it is not clear, the court apparently rationalized that since a sworn complaint was not a jurisdictional prerequisite to a federal suit, the requirements that a charge be sworn to was applicable only to the administrative proceedings before the Commission. The court read the Act as calling for only three jurisdictional prerequisites to the filing of a suit. First, the administrative proceedings before the Commission had to be initiated within the time limitations prescribed under Section 706(d), which at the time was 90 days from the date the cause of action arose; second, that the aggrieved party be notified by the Commission it has been unable to obtain voluntary compliance of the statute by the employer; and, third, the action must thereafter be filed in court in a prescribed period, which at the time was 30 days. What the court in *Choate* did not discuss was the reason for the oath requirement. Later cases have discussed its purpose and have concluded that it acts as a protection for employers against the filing of frivolous claims and harassment. See, e. g., *Weeks v. Southern Bell Telephone & Telegraph Company*, 408 F.2d 228, 231 (5th Cir. 1969). The jurisdictional prerequisites recognized in *Choate* that a charge and a suit be filed within certain time periods also have as their purpose the protection of employers. When these filing deadlines are met the employer is less likely to have to defend against a stale claim. The employer by receiving notice of the charges within a reasonable time is afforded the opportunity to take steps to prevent the loss of evidence useful to rebut the charges. These time limitations have been deemed to be valuable rights which are required to be fulfilled as a prerequisite to federal court jurisdiction. No less valuable to an employer is the protection from frivolous claims and harassment springing from the requirement that

a charge be sworn to. This requirement therefore should be afforded the same prerequisite jurisdictional status as the three requirements recognized in *Choate*.

The failure of the *Choate* court to consider the purpose of oath requirement and to discuss it in the light of the purposes of the jurisdictional requirements it did recognize, undermines its conclusion that the oath requirement is merely directory and technical rather than mandatory and substantive.

The *Choate* court goes further, however, and concludes that when the Commission acts on an unsworn charge a court should "treat the omission of the oath as a permissive waiver by the Commission." 402 F.2d at 360. No authority was cited for this holding, and this court has found none other than cases citing *Choate*. Also, there is no indication in *Choate* that had the Commission acted on an untimely charge or a charge not in writing as required by the Act that this too would have been considered an omission which was waived by the Commission and thus would not be a jurisdictional road block to suit in federal court. The requirement that a charge be under oath was singled out in *Choate* for special treatment because the court felt that to do otherwise would be "a meaningless triumph of form over substance." The court went on to point out that the realities of the situation in which most charging persons find themselves to be in require such a holding. These realities are described as a charging party being without counsel and being inexperienced in the niceties of the law. Indeed this may be true, but as the *Choate* court also points out, under the Commission's regulation "allows aggrieved parties to amend their complaints 'to cure technical defects or omissions, including failure to swear to the charge * * * ' 29 C.F.R. § 1601.11 (1968)." 402 F.2d at 360. Thus, the Commission in reviewing a charge and finding it not to be under oath can call such fact to the charging party's attention and the defect can then be cured by the charging party swearing to the charge. Under the regulations this act relates back

to the original filing. Thus the Commission's regulations are fully designed to prevent form from triumphing over substance.

The *Choate* court also relies on the Commission's regulations passed after the charge in *Choate* was filed as supportive of its holding that a sworn charge is not mandatory and an absence of the oath does not prevent the Commission from taking action on the charge. However, the regulations cited in *Choate* do not go this far. They permit an unsworn charge to be later sworn to in order to cure the defect and this indicates that the Commission felt that a charge which is not under oath does not meet the requirements of the Act but that this defect becomes technical in nature if the charge is later sworn to. However, the regulations in no sense support the *Choate* court's holding, because in *Choate* the charge was *never* sworn to by the charging party at any time.

The next several cases construing the issue were decided by the Fifth Circuit. In *Weeks v. Southern Bell Telephone & Telegraph Company*, 408 F.2d 228 (5th Cir. 1969), the plaintiff filed a timely unsworn charge with the EEOC which was later amended by an untimely sworn charge. The Fifth Circuit held that a timely unsworn complaint can be subsequently amended out of time to meet the requirement that it be sworn to. The court pointed out that the EEOC regulation discussed above authorized amendments of charges to relate back to the original filing date. The court also cited *Choate* as supportive of its decision. However, the *Weeks* decision did not hold that a sworn charge was not required and stated that the purpose of a sworn charge is to "protect employers from unfounded charges or harassment." 408 F.2d at 231. The court noted that the employer was not prejudiced because the unsworn charge was later sworn to. The court also relied on the EEOC's assertion in an amicus brief that "unsworn charges were not served nor were investigations commenced until the charges were sworn." 408 F.2d at 231.

The Fifth Circuit came to the same conclusion in its next decision on this issue. In *Georgia Power Co. v. E. E. O. C.*, 412 F.2d 462 (5th Cir. 1969), the plaintiff filed a timely unsworn charge which was later out of time sworn to. In this case the court relied on the EEOC regulation and *Weeks* and held the sworn charge related back and cured any defect in the charge.

A year later, in *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), the court further emphasized the requirement that a charge be sworn to. In discussing jurisdictional requirements of Title VII suits the court held:

> In addition to the requirements that a charge of discrimination filed by an aggrieved party be "in writing" and "under oath," 42 U.S.C.A. § 2000e–5(a), the statute commands that such a charge "shall be filed within 90 days after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e–5(d).

431 F.2d at 457.

Another case decided under the law existing prior to the 1972 amendment is *Russell v. American Tobacco Co.*, 528 F.2d 357 (4th Cir. 1975). In *Russell* the trial court held that jurisdiction existed even though the charges were not sworn to. It relied on *Choate, supra*, and held that the requirement that charges be sworn to relates solely to the administrative proceedings before the Commission rather than judicial proceedings. The trial court also concluded that the Commission's decision to act on unsigned charges constituted a waiver of the "under oath" requirement. 374 F.Supp. 286, 290 (M.D.N.C.1973). The Fourth Circuit affirmed and citing *Choate* held the requirement a claim be sworn to is "directory and technical" and therefore not a jurisdictional prerequisite to suit. 528 F.2d at 364. Whatever weight *Russell* may have had on pre-amendment cases, since the Fourth Circuit's decision in *EEOC v. Appalachian Power Co.*, 568 F.2d 354 (4th Cir. 1978), it seems clear that *Russell* is no longer adhered to.

In *EEOC v. United States Fidelity and Guaranty Company*, 420 F.Supp. 244 (D.Md.

1976), the individual plaintiff filed a timely unsworn letter charge which was amended by an untimely sworn charge. The court held that the 1972 amendments to the Act did not change the rule that a timely unsworn charge could be subsequently sworn to before the Commission. The court cited a Sixth Circuit case, *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir. 1969), which held that the purpose of the oath was to prevent harassment of employers by the filing of reckless charges, but that the purpose could be fulfilled by requiring verification before action was taken by the Commission. The court held that verification of an unsworn charge could occur after the time for filing the charge passed.

Another district court case reaching the same conclusion is *Heath v. D. H. Baldwin Co.,* 447 F.Supp. 495 (N.D.Miss.1977). In *Heath* plaintiff filed a timely unsworn charge subsequently sworn to while the charge was pending before the Commission. The court held that the 1972 amendments did not overrule the holdings of *Georgia Power* and *Weeks,* reemphasizing that *Georgia Power* and *Weeks* "did not waive the requirement that a charge be made under oath; rather the court, recognizing the remedial nature of Title VII, held that a timely filed unsworn charge, valid in all other aspects, may later be amended to allow the party to add a sworn verification." 447 F.Supp. at 500.

■ In conclusion only the Seventh Circuit case of *Choate, supra,* and the Fourth Circuit case of *Russell, supra,* holds that the under oath requirement is not jurisdictional. Although not discussed in the more recent Fourth Circuit case of *Appalachian, supra, Russell* was implicitly overruled. All discussions of this issue by the Fifth Circuit court have never adopted *Choate's* holding that a charge need not be sworn to. The Fifth Circuit recognizes that a charge has to be sworn to but if it is not initially sworn to it may be sworn to later before the Commission acts on the charge. It follows that if a charge is never sworn to then jurisdiction is lacking in any enforcement proceedings.

The court notes that the language of the 1972 amendment requiring that the charge be under oath is clear and unambiguous. Congress states that "Charges shall be in writing under oath or affirmation . . ." Whatever doubt regarding the oath requirement that might have existed prior to the 1972 amendment has been eliminated. The language of the 1972 amendment is not precatory, ministerial or directive. It is mandatory and jurisdictional and a jurisdictional requirement may not be waived. 2A Moore's Federal Practice § 12.23. Noting that judicial construction often strains legislative intention, this court still cannot interpret a Congressional "mandate" as a judicial "maybe."

### Oath or Affirmation

■ Stewart also contends that EEOC representatives are empowered to administer oaths, and that Stewart's signature was "subscribed and sworn to" before "Azella Lozano, Technician," an EEOC representative. Therefore, it is urged that the charge in this case is "under oath or affirmation" and meets the requirements of the Act. Stewart relies upon Section 710 of the Act which provides that:

> For the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29 shall apply.

42 U.S.C. § 2000e–9.

Section 161 of Title 29 deals with the investigatory powers of the National Labor Relations Board and provides in pertinent part:

> Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence.

29 U.S.C. § 161(1).

Stewart also says that the procedures for administering an oath as was done in this case are set out in the EEOC Compliance Manual. These provisions state that the charging party shall be directed to read the words at the bottom of the form "I swear or affirm that I have read the above charge

and that it is true to the best of my knowledge, information, and belief." After the form is signed, the EEOC representative is directed to "sign, indicating the date of administering the oath." EEOC Compliance Manual 2:0001 to :0005 at 21–25. Stewart contends that this was the procedure followed in her case and constitutes the filing of a sworn charge.

Core Labs in reply states that at the time Stewart filed her charge on August 30, 1977, EEOC's procedural regulations provided that the "charge shall be in writing and signed, and shall be sworn to before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths, and take acknowledgments." 29 CFR § 1601.8. That shortly thereafter amendments to the regulations occurred which provided that "the charge shall be in writing and signed and shall be verified." 29 CFR § 1601.9. The amended regulations define "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." Id. § 1601.3.

Core Labs urges that Section 710 of the Act and 29 U.S.C. § 161 relate solely to the discovery and subpoena powers of the administrative agencies and do not otherwise grant the Commission power to take oaths and affirmations. It contends that powers granted to the Commission under the Act do not contain an expression that the Commission has the power to take oaths and affirmations. 42 U.S.C. § 2000e–4(g). Therefore, Core Labs contends, the Commission's Regulations and Compliance Manual cannot supply a power to Commission representatives to administer an oath or affirmation when the Act does not grant such power to them.

Core Labs also argues that the EEOC has conceded the deficiency in its earlier pronouncement that a representative of the Commission could swear a charging party to the charges. Core Labs points out that the EEOC has recently adopted new forms which now comport with 28 U.S.C. § 1746, which was enacted and made effective in 1976, and prior to the date on which Stewart made her charge.[2] Section 1746 provides in pertinent part that:

> Wherever, under any law . . . any matter is required . . . to be supported . . . by the sworn declaration, verification, certificate, statement, oath or affidavit, in writing of the person making the same . . . such matter may . . . be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> .    .    .    .    .
>
> (2) If executed within the United States . . . : "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

Stewart's signature to the charge is not accompanied by a written declaration under *penalty of perjury* that the statements in her charge are true and correct. Core Labs contends, therefore, that declarations on Stewart's charge are not in substantial compliance with the express language set out in § 1746 so as to satisfy the Act's requirement that the charge be sworn to.

The court is of the opinion that § 161 of Title 29 adopted by the Act is not as broad in its delegation of authority to administer oaths as Stewart urges. Under Section 710 of the Act, § 161 is only applicable to hearings and investigations conducted by the EEOC. It deals strictly with agency hearings and investigations and authorizes certain powers in the agency necessary thereto. It is not a broad grant of power to verify any document at any time, but is

---

**2.** Attached to a letter brief of Core Labs is a Charge of Discrimination form (EEOC Form 5A Sep. 77) on which just above the signature blank for the charging party appears the language: I declare under penalty of perjury that the foregoing is true and correct.

limited in nature. Therefore, § 161 is adopted in the Act in a limited context and it constitutes no blanket authority to the Commission to delegate to its representatives the power to administer an oath or affirmation to filing a written charge of discrimination. The filing of a proper charge must first occur before any investigation or hearing can take place, and § 161 would then become applicable but only in connection with an investigation or hearing on the charge. Since § 161 did not grant the Commission or its designees the authority to administer oaths, to a party in the filing of charges, the Commission's regulations and the Compliance Manual procedures, supra, are likewise incapable of authorizing the administering of oaths in the fashion they describe. The EEOC representative "Azella Lozano, Technician," before whom Stewart subscribed her signature, has not been shown to be a notary public or an officer or other person otherwise authorized to administer an oath or affirmation. Her signature evidencing that Stewart subscribed and swore to the truth of the charge does not meet the requirement of the Act that the charge "shall be in writing under oath or affirmation."

Black's Law Dictionary, 4th ed., p. 120, defines an oath as

"An external pledge of asseveration, made in verification of statements made, or to be made, compiled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party, and to visit him with punishment if they be false."

An oath brands a statement or declaration of facts as being true rather than false. When those facts are shown to be false, then the person subscribing to them is subject to the penalties of perjury.

■ Historically, a notary public or other official authorized by law administered an oath in those situations where a document needed to be sworn to. Section 1746 of Title 28 permits the making of a declaration as an alternative to the traditional method in which instruments are sworn to. In enacting § 1746 Congress recognized this historical procedure and that it also can be inconvenient because sometimes it is necessary to execute a document during other than formal business hours or in a foreign country where additional certifications and documents may be required to prove the authenticity of the person administering the oath. 1976 U.S. Code Cong. and Admin. News, p. 5644. At the same time that § 1746 was enacted, Congress amended 18 U.S.C. § 1621, the general perjury statute, by adding language making a person who falsely subscribes to any material fact in a declaration or statement under 28 U.S.C. § 1746 guilty of perjury.[3]

The language of 28 U.S.C. Section 1746 cannot supply the oath or affirmation which the Act required be made to the written charge in this case. Section 1746 permits an unauthorized sworn declaration or statement by the subscriber to suffice for the traditional manners of oath giving, provided, however, that the declaration or statement be subscribed by the declarant as true under penalty of perjury. The declaration

---

**3.** By statute the Internal Revenue Service has permitted the use of unsworn declarations under penalty of perjury for several years. 26 U.S.C. §§ 6065, 7206(1). The United States Patent Office by regulation has permitted the use of declarations subscribed to under penalty of 18 U.S.C. § 1001 in lieu of an oath otherwise required. 37 CFR 1.68. Section 1001 makes it a crime for a person in any matter within the jurisdiction of any department or agency of the United States to make a false statement or representation knowing the same to be false. The Patent Office regulation requires that the declarant be warned on the document "that willful false statements and the like are punish-

able by fine or imprisonment, or both (18 U.S.C. § 1001). . . ." The forms called for under Patent Office regulations which a declarant must sign specifically refer to the fact that "willful false statements and the like so made are punishable both by fine or by imprisonment, or both, under Section 1001 of Title 18 of the United States Code." 37 CFR 3.11, 3.12a, 3.14a, 3.16a, 3.17a, 3.18a, 3.26a, and 3.32a. All statutes and regulations permitting the use of a declaration in lieu of an oath require that the declaration specifically call to the attention of the subscriber that a false statement is a violation of the law.

subscribed by Stewart states that the charges are true, but it fails to state that the charges are true *under penalty of perjury.* Since the declaration leaves out this essential language, Stewart is not subject to prosecution for perjury under 18 U.S.C. § 1621 and her charges are not sworn to as required by the Act. As pointed out by Core Labs this deficiency in the statement subscribed by Stewart has been corrected by the EEOC in recently adopted forms which contain the required language that the charge is true "under penalty of perjury."

### Equitable Consideration

Although this court is of the opinion Stewart's charge has never been sworn to and therefore violates the Act which requires that a charge before the EEOC be sworn to and that consequently there is a lack of jurisdiction to enforce such charge, this case cannot be disposed of without further inquiry into whether there are any existing equitable grounds which would bar a dismissal of this case for lack of jurisdiction.

The Fifth Circuit has earlier dealt with the issue of whether equitable considerations in Title VII cases should overcome a jurisdictional deficiency growing out of improper procedures adopted by the EEOC. In *Zambuto v. American Telephone and Telegraph Company,* 544 F.2d 1333 (5th Cir. 1977), the employer challenged the court's jurisdiction over an aggrieved employee's Title VII suit because the suit was not filed within 90 days (the then existing time period) after the employee was notified that conciliation efforts had failed and the EEOC did not intend to file suit. The court found that Zambuto had been the victim of the "two-tier" letter approach which was

being utilized at the time the charge was processed by the EEOC. This approach typically consisted of a letter being sent to the aggrieved employee advising that the EEOC had not secured conciliation of the charges and that by request a right-to-sue letter could be obtained from the EEOC. If a request is made, then a second letter is sent notifying the employee the EEOC was not filing suit and that the employee now had the right to sue on the charges. Since the right-to-sue letter would not be issued until a request from the charging employee was received, it permitted the employee to determine when the 90 day time period for filing suit in court began to run.[4] The court held that the statutory plan calling for the filing of suit within a certain time period after conciliation efforts have failed and the EEOC has decided not to sue was designed to keep claims of discrimination by aggrieved employees fresh as a protection to the employer alone. Therefore, the court concluded, where the EEOC procedures circumvented the time limits within which suit must be filed by extending the time beyond the 90 day statutory limit, its practices violated the Act and the underlying Congressional purposes and the rights conferred on the employer.

But, rather than dismissing the case for lack of jurisdiction, the court in *Zambuto* went on to find that the notice "was patently misleading as to the completion of agency action" and under the circumstances the EEOC's erroneous practice should not penalize Zambuto. Therefore, the court concluded that justice required the ruling in the case should be prospective only from the date of the decision plus 90 days.[5]

The Fifth Circuit followed *Zambuto* in two later cases with similar facts. *Page v.*

---

**4.** The first letter sent to Zambuto was not the typical type. It advised that her "case has been administratively closed." It further stated that the EEOC was awaiting a request for issuance of a right-to-sue letter from her or her attorney. That request was later made and the typical second letter was then sent. The suit was filed within 90 days thereafter, but over 180 days after the first letter.

**5.** In *Zambuto* the court cited *DeMateis v. Eastman Kodak,* 511 F.2d 306 (2nd Cir. 1975), modified, 520 F.2d 409 (2nd Cir. 1975), in support of its decision to make its holding prospective only. In *DeMateis* the court concluded that its holding that the statutory 90 day limitation period begins to run when the EEOC notifies the parties that it has dismissed charges should be prospective only if the aggrieved employee was misled by any action of the Commission.

*U. S. Industries, Inc.,* 556 F.2d 346 (5th Cir. 1977); *Turner v. Texas Instruments, Inc.,* 556 F.2d 1349 (5th Cir. 1977).

█ In applying the principles enunciated by these cases, this court must determine whether practices or procedures adopted or utilized by the EEOC caused Stewart to be misled or misled that the charge she filed was under oath as required by the Act.

The EEOC form utilized in this case indicates that a charge can be sworn to before an official in two separate ways. There is a space for an EEOC representative to swear the person making the charge and a space for a notary public to swear the person making the charge. To the unsophisticated and unwary person who is not cognizant of the niceties in swearing to an instrument, the form clearly leaves the impression either procedure could be followed. The form also states that if a person has difficulty in obtaining a notary public to swear them to the charge, the form should be returned to the EEOC who would notarize it at a later date. This court is of the opinion that the form is misleading in that it indicates a charging party need not obtain the services of a notary public to swear them to the charge, but that a representative of the EEOC can perform that function. An aggrieved employee such as Stewart would conclude that when they subscribe and swear to a charge before the EEOC representative this would satisfy the requirement of the Act that the charge be sworn to.

The form is misleading in another aspect. Although the declaration does not contain a statement that it is made under penalty of perjury and thereby does not meet the requirement of 28 U.S.C. § 1746 so as to constitute an oath, it would be misleading to a person who is unsophisticated in what language a declaration must contain in order to make it official under § 1746. To a person such as Stewart who is tendered the form in question by the EEOC, a careful reading of the declaration would imply that all of the earmarks of a legal oath are contained in the declaration and that subscribing her name would constitute the making of an oath and swearing to the charge. Certainly a person using this form would be misled into believing that signing the charge containing this declaration met the requirement of the Act that the charge be under oath.

For the foregoing reasons, this court is of the opinion that its conclusion that the charges in this case were not under oath and that this court lacks jurisdiction over this case should be prospective only and apply to suits brought in this court on charges filed with the EEOC 30 days after this date.

The court would comment that this is the second instance it knows of where the EEOC's practices have placed a charging person's federal suit in jeopardy. The first instance involved the two-tier letter practice and apparently the message of *Zambuto* reached home and has caused the EEOC to abandon that practice. The evidence in this case indicated that the EEOC has recognized the failings of the form used in this case because the declaration contained on the Charge of Discrimination form now being used contains a statement that is made under penalty of perjury which meets the requirements of 28 U.S.C. § 1746. The court hopes that the message of this case will be followed and no future case will arise where the form utilized by the EEOC places in jeopardy a charging party's suit on the ground that the charges are not properly sworn to. The EEOC should also not take comfort in the fact that its past practices which have been brought into question have not been fatal to a charging person's federal suit. Each case must be decided on its own merits and future plaintiffs may not fare as well as those in the past. This court fully expects EEOC personnel to be aware of the requirements of the law and to act in accordance therewith. Past experience indicates that this has not been the case. The EEOC should constantly review its practices so that pitfalls to federal jurisdiction exemplified by this case can be avoided in the future.

For the foregoing reasons, Core Labs' motion to dismiss this case for lack of subject matters jurisdiction is denied.

It is so ORDERED.